**UNITED STATES DISTRICT COURT**
**FOR THE**
**WESTERN DISTRICT OF ARKANSAS**
*Fayetteville Division*

| | | |
|---|---|---|
| MIRHOSSEIN MOUSAVI KARIMI, | ) | |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 5:26-cv-05049-TLB |
| KRISTI NOEM, in her official capacity, | ) | |
| Secretary, U.S. Department of Homeland | ) | |
| Security, et. al., | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM IN SUPPORT OF REQUEST FOR PRELIMINARY INJUNCTION AND EMERGENCY MOTION FOR MANDAMUS RELIEF

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………… 3
 I.  Introduction ………………………………………………………………… 5
 II.  Background
   a. Plaintiff's Background and Immigration Status ……………………………………. 8
   b. USCIS's Implementation of the Adjudicative Hold and the Impact on Plaintiff's Application ………………………………………………………………….. 9
   c. Imminent Loss of Employment ……………………………………………… 10
 III.  Argument
 A. The Court has Subject Matter Jurisdiction ………………………………………… 11
 B. Plaintiff's Claims are Reviewable Under the APA ………………………………… 12
 C. Defendants' Failure to Adjudicate Constitutes Unlawful Withholding or Unreasonable Delay ………………………………………………………………… 13
 D. The Failure to Adjudicate has Real Legal Consequences and is Subject to APA Review ………………………………………………………………………… 14
 E. Defendants' Inaction is Arbitrary and Capricious ………………………………… 15
 F. The Court has Authority to Compel Adjudication ………………………………… 17
 G. Plaintiff is Entitled to a Preliminary Injunction ………………………………… 18
  1. Plaintiff Will Suffer Irreparable Harm Without a Preliminary Injunction ………... 18
  2. Plaintiff is Likely to Succeed on the Merits of the Mandamus Claim …………… 20
  3. Plaintiff is Likely to Succeed on the Merits of the APA Claim …………………... 21
   a. TRAC Factors 1 and 2 ………………………………………………… 22
   b. TRAC Factors 3 and 5 ………………………………………………… 23
   c. TRAC Factor 4 ………………………………………………………… 24
   d. TRAC Factor 6 ………………………………………………………… 24
 H. The Balance of Equities and the Public Interest Support Preliminary Relief ………… 25
 I. Waiver of Bond ………………………………………………………………... 26
 IV.  Conclusion ………………………………………………………………… 26

TABLE OF AUTHORITIES

*Al Otro Lado v. Executive Office for Immigration Review*, 2024 U.S. Dist. LEXIS 167358

(S.D.  Cal. Sept. 17, 2024) ……………… …………………………………………… 13

*Bennett v. Spear,* 520 U.S. 154, 177-78 (1997) …………………………………………….. 15

*Bowser v. Noem*, 2026 U.S. Dist. LEXIS 40770, 2026 WL 33935 ……………………. 5, 16

*Doe v. Trump*, 329 F.R.D. 262 (W.D. WA (2018)) ………………………………………… 14

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) ……………….......... 7, 16

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ……………………...………..16

*Fennell v. Butler*, 570 F.2d 263, 264 (8th Cir. 1978) ……………………………………….. 18

*Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020) ………………………………...…..  11

*Hill v. Xyquad, Inc.*, 939 F.2d 627 (8th Cir. 1991) ……………………………………….. 26

*In re Medicare Reimbursement Litig.,* 414 F.3d 7,10 (D.C. Cir. 2005)................................ 21

*Kucana v. Holder*, 558 U.S. 233 (2010) ………………………………………............... 11

*Minnesota Bearing Co. v. White Motor Corp.*, 470 F.2d 1323, 1326 (8th Cir. 1973) …….. 18

*Motor Vehicle Manufacturers Ass'n v. State Farm Ins.*, 463 U.S. 29 (1983) …………..…… 15

*Miot v. Trump*, No. 25-cv-02471-ACR, 2026, U.S. Dist. LEXIS 21504, 2026 WL

266413 (D.D.C. Feb. 2, 2026) …………………………………………………….…..... 19

*New York v. Trump,* 2025 U.S. Dist. LEXIS 252857 (Dist. Of Mass. (2025)……..……….. 14

*Nken v. Holder*, 556 U.S. 418 (2009) ………………………………………………… 25

*Singh v. Still,* 470 F. Supp 2d 1064 (N.D. Cal., 2007) ……………………………...… 13, 17

*Sackett v. EPA*, 566 U.S. 120 (2012) …………………………………………..….… 15

*Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 77–78 (D.C. Cir.

1984) ...................................................................................................... 13, 22-24

*Zahra Shokri Varniab v. Edlow*, 2026 U.S. Dist. LEXIS 35751, 2026 WL 485490 (N.D. Cal.

Feb. 22, 2026) …………………………………………………………..……… 5,7, 19-20

## STATUTES

5 U.S.C. § 706(1) ...................................................................................................... 8

8 C.F.R. § 274a.2 …………………………………………………………………... 10

28 U.S.C. § 1331 ...................................................................................................... 7

# I.  Introduction

Plaintiff MIRHOSSEIN MOUSAVI KARIMI (hereinafter "Plaintiff Karimi" or "Plaintiff") is a national of Iran. Plaintiff respectfully moves this Court for a preliminary injunction compelling Defendants to adjudicate his pending Form I-765, Application for Employment Authorization within fifteen days of the Court's order.[1] Plaintiff does not challenge the authority of the Department of Homeland Security to implement internal policy consistent with the Presidential Proclamation at issue. Rather, Plaintiff challenges the prolonged and indefinite adjudicatory hold imposed on his application, based solely on his country of nationality, as a consequence thereof, and requests that the Court order Defendants to adjudicate his Form I-765 within fifteen (15) days of the Court's Order.

As some courts[2] have recognized, the government's adjudication hold extends far beyond the stated context of the Presidential Proclamation because it encompasses even pending immigration benefit requests from individuals who have already been lawfully admitted into the United States. *Bowser v. Noem*, 2026 U.S. Dist. LEXIS 40770, 2026 WL 33935. Courts have also observed that there is no evidence Defendants considered reasonable alternatives to such an expansive hold policy. *Shokri Varniab v. Edlow*, 2026 U.S. Dist. LEXIS 35751, 2026 WL 485490, at *18–19 (N.D. Cal. Feb. 22, 2026).

Plaintiff is a highly skilled professional currently employed in the United States as a Staff

---

[1] Plaintiff filed this action on February 20, 2026, alleging unreasonable delay in the adjudication of his Form I-765. Prior to filing, Plaintiff had submitted a congressional inquiry; however, USCIS did not issue its response until February 25, 2026, after the Complaint was filed. Accordingly, at the time of filing, Plaintiff lacked confirmation that the delay in adjudicating his application was attributable to Presidential Proclamation 10949 and USCIS's corresponding adjudicative hold policies, implemented through USCIS Policy Memoranda PM-602-0192 and PM-602-0194. That circumstance has since changed. USCIS has now expressly confirmed that Plaintiff's application is subject to the adjudicative hold, and Plaintiff therefore seeks preliminary injunctive relief to challenge the unlawful and overbroad application of this policy to his case, which operates solely on the basis of his nationality, Iran.
[2] *Shokri Varniab v. Edlow*, 2026 U.S. Dist. LEXIS 35751, 2026 WL 485490 (N.D. Cal. Feb. 22, 2026).

Data Scientist with Walmart Inc. Plaintiff presently holds employment authorization pursuant to F-1 Optional Practical Training ("OPT") with cap-gap authorization, which will expire on April 1, 2026. After that date, Plaintiff must possess a valid Employment Authorization Document ("EAD") in order to lawfully continue his employment in the United States.

Plaintiff timely filed his Form I-765 with U.S. Citizenship and Immigration Services ("USCIS"). Despite the straightforward nature of the application and Plaintiff's continued eligibility for employment authorization, USCIS has allowed the application to remain pending for more than five months (156 days). During this time, USCIS has issued no Request for Evidence ("RFE"), identified no deficiencies, and provided no indication as to when the application will be adjudicated. The only information available to Plaintiff is that USCIS is withholding adjudication pursuant to Presidential Proclamation 10949, based solely on Plaintiff's country of nationality. Absent judicial intervention, Plaintiff's application may remain pending for months or even years.

USCIS has confirmed, through a formal response to a congressional inquiry by Congressman Steve Womack, that Plaintiff's Form I-765 and Form I-485 applications have been placed on an indefinite "adjudicative hold" pursuant to Policy Memoranda PM-602-0192 and PM-602-0194. (**Exhibit A**). This hold applies categorically to nationals of Iran and other designated countries, with no individualized determination, no discernible endpoint, and no mechanism for Plaintiff to obtain a final decision on his application. Critically, Plaintiff has no criminal history, no immigration violations, and has maintained lawful status continuously since August 2019. Despite these favorable circumstances, USCIS explicitly confirmed that he is ineligible to request expedited processing, noting he is "from a banned country and [is] restricted from expedited processing at this time." (**Exhibit B**).

6

The government's delay now threatens to inflict severe and irreparable harm on Plaintiff unless his Form 1-765, Application is adjudicated. If USCIS does not adjudicate Plaintiff's application on or before April 1, 2026, or within fifteen (15) days of this Court's order, Plaintiff will be forced to cease working for Walmart as a Staff Data Scientist, because federal law requires employers to verify that employees possess valid employment authorization. Thus, despite being fully eligible for the benefit sought, Plaintiff faces the loss of his livelihood through no fault of his own, solely because USCIS has failed to act and due to implementation of its internal Policy Memoranda PM-602-0192 and PM-602-0194.

Courts have repeatedly recognized that agency delay becomes unreasonable when it threatens to nullify the very benefit the applicant seeks. In *Shokri Varniab v. Edlow*, 2026 U.S. Dist. LEXIS 35751, 2026 WL 485490 (N.D. Cal. Feb. 22, 2026), the court granted preliminary injunctive relief requiring USCIS to adjudicate delayed work authorization applications where plaintiffs faced imminent loss of employment due to agency inaction, emphasizing that USCIS cannot withhold adjudication solely on the basis of an applicant's nationality. Although these cases arise in different jurisdictions, the circumstances here present the same imminent harm and unreasonable delay caused by a blanket nationality-based adjudication hold.

Importantly, Defendants have not identified any specific national security or public safety concern related to Plaintiff Karimi. Nor have they articulated any clear endpoint for the adjudication hold. As the court noted in *Varniab*, Defendants have "not identified the 'condition precedent' for the PM-602-0192 adjudication hold to be lifted, and no end point is apparent from the Policy Memorandum itself." 2026 U.S. Dist. LEXIS 35751, 2026 WL 485490, at *7. Moreover, although agencies may change policy, but they must provide a reasoned explanation for doing so. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). Yet nothing in PM-

602-0192 or PM-602-0194 reflects that the agency considered the serious professional and personal consequences imposed on applicants such as Plaintiff Karimi, and neither does either policy memoranda carve out any exception for individuals who were already admitted to the United States after prior vetting or take into consideration the applicants history while residing in the United States. *Shokri Varniab*, 2026 U.S. Dist. LEXIS 35751, 2026 WL 485490, at *19.

Accordingly, Plaintiff seeks narrowly tailored relief: an order requiring Defendants to adjudicate Plaintiff's Form I-765 Application on or before April 1, 2026, or within fifteen (15) days of this Court's Order, so that Plaintiff may avoid the imminent and irreparable harm caused by the government's unlawful delay and blanket suspension of immigration benefits based solely on the applicant's country of nationality.

## II. Background

### a.  Plaintiff's Background and Immigration Status

Plaintiff is a citizen of Iran who has been lawfully present in the United States in F-1 nonimmigrant status since August 2019, more than six and a half years. Plaintiff's F-1 visa was issued by the U.S. Department of State during the first term of the current administration, reflecting an affirmative federal determination at that time that Plaintiff posed no security risk and was eligible for admission to the United States. Plaintiff is currently employed as a Staff Data Scientist at Walmart Inc. in Bentonville, Arkansas, one of the largest employers in the country, where his work focuses on artificial intelligence. Plaintiff is also the beneficiary of an approved National Interest Waiver (NIW) immigrant petition (Form I-140), reflecting a federal determination that his continued work in artificial intelligence serves the national interest of the United States.

On October 16, 2025, Plaintiff concurrently filed Form I-485 (Application to Register

Permanent Residence or Adjust Status) and Form I-765 (Application for Employment Authorization) with USCIS. (Doc. 2, Plaintiff's Compl., ¶ 15). Plaintiff completed his required biometrics on November 21, 2025. (Doc. 2, Plaintiff's Compl., ¶ 16). USCIS has issued no request for evidence and has not sought any additional information; no further action is required from Plaintiff.

Plaintiff's current employment authorization is maintained through cap-gap OPT provisions, which will expire on April 1, 2026. Under the cap-gap, when an employer files an H-1B petition for an F-1 student with valid OPT, federal regulations automatically extend the student's work authorization to cover the gap until the H-1B becomes effective. Plaintiff also has a pending cap-subject H-1B change-of-status petition filed by Walmart Inc., in June 2025. The petition sought a change of status with an intended start date of October 1, 2025. That petition remains unadjudicated for over five months (173 days)  after the intended start date. Accordingly, Plaintiff's ability to continue working depends entirely on the cap-gap extension, which ends on April 1, 2026. If the H-1B petition is not approved and the EAD is not issued by that date, or within fifteen (15) days of this Court's order, Plaintiff will lose his employment authorization and will be forced to cease his employment as a Staff Data Scientist with Walmart due to the company's strict policy prohibiting employment without valid authorization.

**b. <u>USCIS's Implementation of the Adjudicative Hold and the Impact on Plaintiff's Application</u>**

On December 2, 2025, USCIS issued Policy Memorandum PM-602-0192, instructing adjudicating officers to place a hold on all pending benefit requests filed by nationals of countries identified in Presidential Proclamation 10949, including Iran.[3] On January 1, 2026, USCIS issued PM-602-

---

[3] Courts commonly rely on Fed. R. Evid. 201, to take judicial notice of facts that are "not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily

0194, expanding the scope of the hold to include nationals of additional countries listed in Presidential Proclamation 10998. (**Exhibit C**). Both memoranda provide that the hold "will remain in effect until lifted or modified by the Director of USCIS."

On or about January 28, 2026, the office of Congressman Steve Womack submitted a formal congressional inquiry on Plaintiff's behalf regarding the status of his Form I-765 Application (IOE0934226124) and Form I-485 Application (IOE0934226123). In response, USCIS expressly confirmed that Plaintiff's Application is subject to the adjudicative hold imposed under PM-602-0192 and PM-602-0194 and reiterated that "[t]he hold remains in effect until formally lifted by the USCIS Director through subsequent written direction." (**Exhibit A**).

Plaintiff also independently sought expedited processing of his Form I-765 from USCIS. USCIS declined to accept the request, informing Plaintiff that he is "from a banned country and [is] restricted from expedited processing at this time." (**Exhibit B**).

### c.   <u>Imminent Loss of Employment</u>

Walmart Inc. maintains a publicly available "Authority to Work" compliance policy, along with participating in E-Verify, requiring managers to inspect, verify, and document the identity and employment authorization of every associate. The policy further provides that, "under U.S. law, an employer must terminate an employee who cannot present proof of valid work authorization within a specified period." (**Exhibit D**).

Plaintiff's cap-gap OPT employment authorization is set to expire on April 1, 2026. In accordance with Walmart's compliance policies and federal Form I-9 requirements (8 C.F.R. § 274a.2), Walmart cannot lawfully continue employing Plaintiff without valid work authorization.

---

determined from sources whose accuracy cannot reasonably be questioned." Since presidential proclamations and USCIS policy memoranda are official government documents publicly available on government websites, courts routinely take judicial notice of them under Rule 201, and Plaintiff asks this Court to take judicial notice of the same.

## III. Argument

### A.  The Court has Subject Matter Jurisdiction

This Court has subject matter jurisdiction pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), the Mandamus Act, 28 U.S.C. § 1361, and the federal question statute, 28 U.S.C. § 1331. These statutes collectively authorize federal courts to review claims alleging that a federal agency has unlawfully withheld or unreasonably delayed required agency action. Accordingly, federal courts retain jurisdiction to review legal questions arising from immigration adjudications, including whether the government has failed to comply with its statutory obligations to adjudicate applications within a reasonable time.

The Supreme Court has repeatedly reaffirmed that judicial review remains available for legal questions in the immigration context. In *Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020), the Court held that the phrase "questions of law" must be interpreted broadly to include the application of legal standards to undisputed facts. In reaching that conclusion, the Court emphasized the "strong presumption favoring judicial review of administrative action," a presumption that courts consistently apply to immigration statutes. *Id.* at 229 (quoting *Kucana v. Holder*, 558 U.S. 233 (2010)).

Consistent with this principle, federal courts retain authority to determine whether the government has complied with its legal obligations in administering the immigration laws. Although Congress has limited judicial review over certain discretionary immigration determinations, those limitations do not extend to claims challenging the legality of agency inaction or delay. Courts therefore maintain jurisdiction to determine whether the government has unlawfully withheld action or unreasonably delayed the adjudication of immigration benefits or

11

subjected applicants, such as Plaintiff Karimi, to arbitrary or capricious agency action not in accordance with the law.

Plaintiff's claims fall squarely within this well-established jurisdictional framework. Plaintiff does not ask this Court to review the substantive merits of USCIS's ultimate decision regarding his Form I-765 application. Rather, Plaintiff challenges the agency's failure to adjudicate the application within a reasonable time. Such claims are routinely reviewed by federal courts under the APA, which expressly authorizes courts to compel agency action unlawfully withheld or unreasonably delayed.

B. **Plaintiff's Claims are Reviewable Under the APA**

The Administrative Procedure Act authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." (Administrative Procedure Act 5 U.S.C. §706(1)). Courts therefore possess jurisdiction to review claims alleging that an agency has failed to take required action.

Plaintiff's challenge arises from Defendants' failure to adjudicate his Form I-765 within a reasonable time as required by 5 U.S.C.§ 555(b). Without a final adjudication of his application, Plaintiff Karimi cannot maintain lawful employment in the United States and will be forced to cease working once his current cap-gap OPT work authorization expires, suffering severe and irreparable harm. Plaintiff alleges that Defendants' conduct violates their duty to adjudicate immigration benefit applications, constituting an unreasonable delay under the APA, and amounts to an unlawful withholding of agency action. Plaintiff further alleges that Defendants' actions exceed their statutory authority and fail to comply with the requirements of reasoned decision making required by the APA.

Regardless of how the argument is framed, the essential claim remains the same: USCIS cannot lawfully refuse or indefinitely delay adjudication of immigration applications that it is obligated to decide simply based on the applicant's country of nationality. Courts consistently recognize the distinction between an agency's discretion over the outcome of an application and its obligation to make a decision in the first place. As one court explained, "there is a difference between the agency's discretion over how to resolve an application and the agency's discretion whether it resolves an application." See *Singh v. Still*, *, 470 F. Supp 2d 1064 (N.D. Cal., 2007). While the agency may exercise discretion in approving or denying a benefit, it does not possess unfettered discretion to refuse to adjudicate the application altogether.

Accordingly, Plaintiff's claims fall squarely within the scope of review authorized by §706(1) of the APA.

### C. Defendants' Failure to Adjudicate Constitutes Unlawful Withholding or Unreasonable Delay

The APA distinguishes between two types of agency inaction: unlawful withholding and unreasonable delay. Courts analyze these claims using distinct frameworks.

As recently explained in *Al Otro Lado v. Executive Office for Immigration Review*, 2024 U.S. Dist. LEXIS 167358 (S.D. Cal. Sept. 17, 2024), the distinction between withholding and delay is significant. When an agency withholds a required action, it violates §706(1) regardless of its reasons for doing so. By contrast, when an agency delays action, the court must determine whether the delay is unreasonable under the six-factor test established in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) (discussed below). Here, Plaintiff plausibly alleges both forms of unlawful agency conduct.

13

First, Defendants have effectively withheld adjudication of Plaintiff's application. Plaintiff's Form I-765 has remained pending for more than five months (156 days) without any explanation, request for evidence, or meaningful progress toward adjudication. Such indefinite inaction effectively amounts to a refusal to adjudicate the application.

Second, even if characterized as delay rather than withholding, the delay is plainly unreasonable when evaluated under the TRAC factors. Plaintiff faces a concrete deadline because his cap-gap OPT employment authorization will expire on April 1, 2026. Without a decision on his application Plaintiff will be unable to maintain employment with Walmart despite being otherwise eligible for employment authorization.

### D.  The Failure to Adjudicate has Real Legal Consequences and is Subject to APA Review

Defendants' inaction also constitutes reviewable agency action because it has direct and immediate legal consequences for Plaintiff.

Courts have repeatedly recognized that an agency's decision to impose an indefinite pause or hold on adjudication may constitute reviewable agency action under the APA. Courts have explained that the requirement of finality is satisfied when an agency decision produces concrete legal consequences for affected individuals. For example, courts have held that even temporary pauses in agency decision-making can qualify as final agency action where they impose real-world consequences on regulated parties. See *New York v. Trump,* 2025 U.S. Dist. LEXIS 252857 (Dist. Of Mass. (2025)) (holding that an agency pause constituted final agency action because it imposed immediate consequences). Similarly, in *Doe v. Trump*, 329 F.R.D. 262 (W.D. WA (2018) (the court held that an agency memorandum suspending processing of certain immigration benefits constituted final agency action because it produced substantial real-world impacts).

14

These decisions recognize that even relatively short delays can produce cascading consequences for individuals who depend on agency adjudication to maintain lawful status or employment. That principle applies with particular force here. Without adjudication of his Form I-765, by April 1, 2026, or within fifteen (15) days of this Court's order,  Plaintiff Karimi cannot maintain lawful employment. The agency's failure to act therefore has immediate and significant legal consequences. As courts have explained, where an agency's position is definitive and its consequences are real, those circumstances represent the "hallmarks of APA finality. (See *Sackett v. EPA*, 566 U.S. 120 (2012) see also, *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997) (establishing a two-part test for determining final agency action (1) the action must mark the consummation of the agency's decision-making process and cannot be of a mere tentative or interlocutory nature; and (2) the action must be one by which rights or obligations have been determined, or from which legal consequences will flow).

### E.  Defendants' Inaction is Arbitrary and Capricious

The Administrative Procedure Act also authorizes courts to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See Administrative Procedure Act 5 U.S.C. §706(2)(A).

The Supreme Court has emphasized that the core requirement of arbitrary-and-capricious review is reasoned decision-making. Agency action must be supported by a rational explanation connecting the facts found to the decision made. See *Motor Vehicle Manufacturers Ass'n v. State Farm Ins*., 463 U.S. 29 (1983). Where an agency fails to provide any explanation for its action, or fails to act altogether, the requirement of reasoned decision-making cannot be satisfied.

Here, Defendants have offered no reasoned explanation for why Plaintiff's application has remained pending for such an extended period beyond the agency's own reported historical

15

average processing times.[4] The agency has not issued a request for evidence, identified any deficiency, or provided any timeline for completing the adjudication of Plaintiff Karimi's Application. Moreover, Defendants have not cited any national security concerns or public safety concerns in connection with Plaintiff Karimi. Accordingly, this unexplained delay is inconsistent with the APA's requirement that agencies engage in reasoned and timely decision-making. Even setting aside this unexplained delay, the adjudicative hold independently fails arbitrary-and-capricious review under *State Farm*, which holds that agency action is unlawful where it relies on impermissible factors, ignores important aspects of the problem, contradicts the evidence, or reflects implausible reasoning. The policy and memorandum at issue is deficient on multiple, independent grounds.

First, PM-602-0192 and PM-602-0194 improperly expand presidential proclamations beyond their lawful scope. Those proclamations regulate the entry of foreign nationals, yet USCIS has repurposed them to suspend adjudication of applications filed by individuals already lawfully present in the United States. As a federal court recently observed, the government's rationale "makes even less sense for those . . . who are already in the country." (*Bowser v. Noem,* Civil Action No. 26-cv-10382-AK (D. Mass. Feb. 27, 2026)). Plaintiff's circumstances underscore this irrationality: he has maintained lawful F-1 status for over six and a half years, undergone repeated government vetting, and obtained an approved National Interest Waiver recognizing that his work serves the national interest. Applying an entry-based restriction to such an individual is inherently illogical.

---

[4] See USCIS Historical Average Processing Times, available at: https://egov.uscis.gov/processing-times/historic-pt

16

Second, USCIS wholly failed to consider the significant reliance interests at stake. Plaintiff filed his application before the challenged policy was announced and reasonably relied on USCIS's established processing practices and its obligation to adjudicate within a reasonable time. Agencies must account for "serious reliance interests" when changing course, as emphasized in *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) and *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009). The agency's failure to address those interests is a fundamental flaw, not a minor oversight.

Third, the agency failed to consider obvious, less restrictive alternatives. Rather than continuing adjudications with enhanced vetting, individualized review, or additional procedural safeguards, USCIS imposed a categorical freeze on all applications from the designated countries. It offered no explanation for why such an extreme measure was necessary, further underscoring the absence of reasoned decision-making.

Finally, the policy operates as a blanket, nationality-based bar without any individualized assessment. Despite Plaintiff's extensive vetting history, including biometrics, background checks, and years of lawful status, his application has been halted solely because of his country of origin. This indiscriminate approach directly contradicts the evidentiary record and exemplifies the type of agency action that *State Farm* forbids, action that runs counter to the evidence and cannot be justified as the product of reasoned judgment.

### F. The Court has Authority to Compel Adjudication

Critically, an order requiring Defendants to adjudicate Plaintiff's application would not encroach upon the agency's discretion over the ultimate decision. While the government retains broad authority to grant or deny immigration benefits, that discretion does not extend to an indefinite

17

refusal to act. Courts have repeatedly made clear that although agencies may control the substance of their decisions, they cannot avoid making those decisions altogether. *See, Singh v. Still*, 470 F. Supp. 2d 1064 (N.D. Cal. 2007).

The relief Plaintiff seeks is therefore limited and appropriate. Plaintiff does not ask this Court to dictate the outcome of his Form I-765 Application, or to substitute its judgment for that of the agency. Rather, Plaintiff seeks only an order compelling Defendants to fulfill their non-discretionary duty to adjudicate his application within a reasonable time, specifically on or before April 1, 2026, or within fifteen (15) days of this Court's Order.

### G.  **Plaintiff is Entitled to the Grant of a Preliminary Injunction**

A preliminary injunction is an extraordinary but appropriate remedy when necessary to prevent imminent and irreparable harm. To obtain such relief, a plaintiff must demonstrate (1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted, and (4) the effect on the public interest. See *Minnesota Bearing Co. v. White Motor Corp.*, 470 F.2d 1323, 1326 (8th Cir. 1973); see also, *Fennell v. Butler*, 570 F.2d 263, 264 (8th Cir. 1978) (the court restated the standard for granting a preliminary injunction, requiring a clear showing of: (1) likely success on the merits and a possibility of irreparable harm; or (2) serious questions on the merits that warrant litigation, with the balance of hardships strongly favoring the party seeking the injunction). Plaintiff Karimi satisfies each of the required elements, under both the traditional test and the restated standard set out in *Fennell*.

## 1.  **Plaintiff Will Suffer Irreparable Harm Without a Preliminary Injunction.**

Plaintiff faces imminent and irreparable harm because the continued delay in adjudicating his application threatens his ability to maintain lawful employment in the United States. Plaintiff's current work authorization under cap-gap OPT will expire on April 1, 2026. After that date, Plaintiff must possess a valid Employment Authorization Document ("EAD") in order to continue working for Walmart.

Federal law requires employers to verify that employees possess valid employment authorization. If Plaintiff's Form I-765 remains pending beyond the expiration of his cap-gap authorization, Walmart will be legally prohibited from continuing to employ him. As a result, Plaintiff will lose his position as a Staff Data Scientist despite having complied with all legal requirements and timely filing his application for continued employment authorization. Plaintiff will also lose the legal ability to remain lawfully employed in the United States.

Courts have recognized that this type of harm extends beyond ordinary economic injury. As one court explained, where an applicant loses the ability to work at all, due to agency inaction, the harm is not limited to lost wages because the individual "would lose the legal ability to work at all." *Miot v. Trump*, No. 25-CV-02471-ACR, 2026 U.S. Dist. LEXIS 21504, 2026 WL 266413, at *36 (D.D.C. Feb. 2, 2026). Such a loss implicates the applicant's fundamental ability to earn a livelihood, remain self-sufficient, and support himself. *Id.*

Courts have also recognized that prolonged delays in adjudicating immigration benefits can cause additional irreparable harm. In *Shokri Varniab v. Edlow*, 2026 U.S. Dist. LEXIS 35751, 2026 WL 485490, (N.D. Cal. Feb. 22, 2026), the court found that applicants whose applications remained frozen faced harms including the inability to travel to visit family, the inability to make basic life decisions, and imposed significant emotional strain. 2026 U.S. Dist. LEXIS 35751, 2026

WL 485490, at *23. The court in *Shokri Varniab* concluded that plaintiffs would suffer irreparable harm absent a preliminary injunction. The loss of lawful employment constitutes irreparable harm. Courts consistently recognize that the inability to work lawfully, the resulting financial instability, and the disruption to a professional career cannot be adequately remedied by later monetary damages or delayed adjudication. Once employment is terminated due to lack of work authorization, the resulting harm to a professional's career trajectory and reputation cannot easily be undone.

The reasoning of *Shokri Varniab* applies directly here. In that case, the court determined that USCIS's delay in adjudicating an employment authorization application, on account of the applicant's country of nationality, created irreparable harm where the plaintiff faced the loss of employment. The court recognized that forcing an applicant to stop working due solely to agency delay and internal adjudicative policy holds undermines the purpose of employment authorization statutes. The same harm is present here. If Defendants fail to adjudicate Plaintiff Karimi's application by April 1, 2026, or within fifteen (15) days of this Court's order, Plaintiff will be forced to stop working for Walmart even though he remains eligible for the authorization he seeks. Furthermore, Plaintiff Karimi cannot obtain monetary damages from the federal government due to sovereign immunity, and any harm to his career path and immigration status cannot be fully addressed through monetary compensation at a later time.

Because Plaintiff's continued employment depends entirely on the timely adjudication of his Form I-765, the harm he faces is both imminent and irreparable. Plaintiff is therefore likely to succeed in showing that he will suffer irreparable harm due to USCIS's unlawful withholding and unreasonable delay.

   2.  <u>**Plaintiff is Likely to Succeed on the Merits of the Mandamus Claim**</u>

Plaintiff is likely to succeed on the merits of his claims under both the Administrative Procedure Act ("APA") and the Mandamus Act. These statutes authorize courts to compel federal agencies to act where they have unlawfully withheld or unreasonably delayed agency action.

Under the APA, courts must "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Similarly, the Mandamus Act authorizes federal courts to compel a federal officer or agency to perform a duty owed to the applicant. 28 U.S.C. § 1361. Both forms of relief apply where an agency fails to adjudicate an application within a reasonable time. Mandamus relief is appropriate where the plaintiff demonstrates (1) a clear right to relief, (2) a clear duty to act on the part of the defendant, and (3) the absence of an adequate alternative remedy. See *In re Medicare Reimbursement Litigation,* 414 F.3d 7 (1st Cir. 2005).

Plaintiff satisfies each of these requirements. First, Plaintiff has a clear right to adjudication of his Form I-765 within a reasonable time. Federal law requires agencies to conclude matters presented to them with "due regard for the convenience and necessity of the parties involved." Once a properly filed application is before the agency, it has a nondiscretionary duty to render a decision. Although USCIS retains discretion over the ultimate outcome, it does not have the unfettered discretion to refuse to adjudicate or to delay adjudication indefinitely. Second, Defendants have a clear duty to act. The obligation to adjudicate a properly filed application is mandatory, even where the agency retains discretion over the substance of the decision. And third, Plaintiff has no adequate alternative remedy. Plaintiff timely filed his application and has waited more than five months without any action by USCIS. Administrative inquiries and requests for expedited processing have not resulted in any progress. Absent judicial intervention, the application may remain pending beyond the expiration of Plaintiff's current work authorization.

Courts have recognized that mandamus relief is appropriate where agency delay threatens

21

to deprive a plaintiff of a statutory benefit. In *Shokri Varniab,* 2026 U.S. Dist. LEXIS 35751, (N.D. Cal. Feb. 22, 2026),  the court found a likelihood of success on the merits where USCIS delayed adjudication of a work authorization application while the plaintiff faced imminent employment consequences.

The same reasoning applies here and warrants judicial relief.

### 3.  **Plaintiff is Likely to Succeed on the Merits of the APA Claim**

Claims of unreasonable agency delay under the Administrative Procedure Act are analyzed under the six-factor framework established in *Telecommunications Research & Action Center v. FCC.* Application of those factors demonstrates that the delay in this case is unreasonable.

In *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 77–78 (D.C. Cir. 1984), the court set out a six-factor test to determine whether an administrative delay is unreasonable ("TRAC factors"). In determining whether the Defendants have unreasonably delayed the complete and proper adjudication of Plaintiff's Form I-765, Application for Work Authorization, 5 U.S.C. § 706(1), this Court must balance the following TRAC factors:

> *(1)  the time agencies take to make decisions must be governed by a "rule of reason";*
> *(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;*
> *(3)  delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;*
> *(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;*
> *(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and*
> *(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.*

*TRAC*, 750 F. 2d at 79-80 (internal citations and quotation marks omitted).

### a. TRAC Factors 1 and 2: Rule of Reason and Congressional Timetable

The first factor requires that agency decisions be governed by a "rule of reason." Plaintiff's application has been pending for more than five months (156 days) without explanation. Such a delay exceeds the time typically required to adjudicate Form I-765 applications as evidenced by USCIS own reported historical average processing time. (Available at: https://egov.uscis.gov/processing-times/historic-pt, which indicates that USCIS completed adjudication of Form I-765 applications filed in 2025 within approximately 2.2 months).

USCIS regulations require that employment authorization applications be adjudicated within 90 days. See 8 C.F.R. § 274a.13(d). Congress has further expressed its expectation that immigration benefits generally be processed within 180 days. See 8 U.S.C. § 1571(b). The delay in this case far surpasses the 90-day regulatory standard and is rapidly approaching the 180-day congressional benchmark, highlighting a significant and unreasonable failure to meet established timelines as well as USCIS's own reported processing times. Because Defendants have failed to provide any reasoned justification for the indefinite delay and have not taken any meaningful steps toward adjudication, the rule of reason weighs strongly in Plaintiff's favor.

In consideration of the above, the above factors favor Plaintiff Karimi.

### b. TRAC Factor 3 & 5: Dangers to Human Health and Welfare and Interests Prejudiced

The third and fifth TRAC factors require the Court to consider the impact of the delay on human welfare and the nature of the interests prejudiced by the delay.

Here, the delay threatens Plaintiff's ability to maintain lawful employment and pursue his professional career. Plaintiff's position as a Staff Data Scientist with Walmart represents a significant professional achievement and a critical component of his long-term career

23

development. If his employment is interrupted due to the lack of timely adjudication, the resulting harm will extend beyond temporary financial loss and will affect his professional reputation, future employment prospects, and career trajectory.

Courts have recognized that delays affecting a person's ability to work implicate serious human welfare concerns. In *Shokri Varniab*, 2026 U.S. Dist. LEXIS 35751, (N.D. Cal. Feb. 22, 2026) the court concluded that the loss of lawful employment caused by agency delay constituted a substantial prejudice weighing heavily in favor of the plaintiff. Because the delay here threatens to eliminate Plaintiff's ability to continue working at all in the United States,  these factors weigh strongly in favor of finding the delay unreasonable.

As such, these factors, favor the Plaintiff.

### c.  **TRAC Factors 4 : Competing Priorities**

The fourth TRAC factor considers whether expediting the requested action would interfere with competing agency priorities. Requiring USCIS to adjudicate Plaintiff's application would not meaningfully disrupt agency operations or priorities. Plaintiff does not seek approval of his application; he seeks only a decision.

Courts routinely recognize that compelling an agency to complete adjudication of a single delayed application does not improperly intrude on agency discretion or policymaking authority. Rather, it simply ensures that the agency fulfills its statutory obligation to act. Moreover, Plaintiff is not asking this Court to direct the outcome of his Application, acknowledging that USCIS retains full discretion in whether to approve or deny a pending application or petition, and make any requests for additional information or evidence.

Given the substantial prejudice to Plaintiff and the absence of any demonstrated competing governmental priorities, this factor weighs decisively in Plaintiff Karimi's favor.

### d.  TRAC Factor 6: Impropriety

The final TRAC factor clarifies that a finding of unreasonable delay does not require evidence of bad faith or improper motive. Even absent any allegation of impropriety, prolonged and unexplained agency inaction may constitute unlawful delay. Additionally, even though no impropriety is required to establish unreasonable delay, the blanket nationality-based nature of the hold itself raises serious questions about whether the delay reflects reasoned decision-making.

Accordingly, the TRAC factors support Plaintiff's claim that the delay in adjudicating his application is unreasonable.

### H.  The Balance of the Equities and the Public Interest Support Preliminary Relief.

The balance of equities clearly favors Plaintiff. If relief is denied, Plaintiff will lose his lawful employment and suffer severe disruption to his professional career. The harm he faces is significant and immediate.

By contrast, the requested relief imposes minimal burden on the government. As explained in *Nken v. Holder*, 556 U.S. 418 (2009), once an applicant meets the initial requirements for a stay, courts then consider two factors: the harm to the opposing party and the public interest. When the government is the opposing party, the balance of equities and public factors merge. Importantly, Plaintiff Karimi does not seek preferential treatment or request that this Court compel the approval of his application. He seeks only that USCIS perform the nondiscretionary duty of adjudicating the application within a reasonable time.

Additionally, public interest favors prompt and lawful agency action. Ensuring that federal agencies comply with statutory obligations and process applications within a timely manner promotes fairness, accountability, and confidence in the immigration system. Moreover, allowing

highly skilled professionals such as Plaintiff to continue contributing to the U.S. workforce serves important economic interests.

For these reasons, the balance of equities and the public interest strongly support granting the requested injunction.

### I.   No Bond is Required Under Rule 65(c)

Under Federal Rule of Civil Procedure 65(c), a court may require security as a condition of granting injunctive relief, however, it retains discretion to waive the bond requirement where there is no meaningful risk of monetary harm to the enjoined party. The Eighth Circuit has recognized that district courts have broad discretion in setting the amount of security, including waiving bond altogether where appropriate, making a reasonable assessment of the risks involved. *Hill v. Xyquad, Inc.*, 939 F.2d 627 (8th Cir. 1991). Here, no bond should be required because Defendants will not suffer any compensable damages as a result of the requested relief. As recognized by the *Bowser* Court, the burden of adjudicating a single application does not constitute monetary harm warranting security.(2026 U.S. Dist. LEXIS 40770, 2026 WL 33935). Because there is no reasonable risk of financial injury to Defendants, the Court should exercise its discretion to waive the bond requirement.

### IV.   CONCLUSION

Plaintiff seeks only what the law requires: the timely adjudication of his properly filed application for employment authorization. The continued delay in adjudicating his Form I-765 threatens to deprive Plaintiff of his lawful employment and nullify the benefit he seeks.

Because Plaintiff is likely to succeed on the merits, will suffer irreparable harm without relief, and because the balance of equities and the public interest favor prompt adjudication, this

Court should grant Plaintiff's Motion for a Preliminary Injunction and order Defendants to adjudicate Plaintiff's Form I-765 on or before April 1, 2026, or within fifteen (15) days of this Court's order.

Date:  March 23, 2026                                 Respectfully submitted,

        /s Sadaf F. Ahmed
**Sadaf F Ahmed, Esq.**
**JEELANI LAW FIRM, PLC**
**3701 W. Algonquin Road, Ste. 630**
**Rolling Meadows, IL 60008**
sadaf@jeelani-law.com
**Phone:(312) 767-9030**
**Fax:(312) 767-9030**
*Counsel for Plaintiff*

27